1
2
3
4
5
6
7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KOHEN DIALLO E. UHURU,                    No.  2:23-cv-0068 DC AC P

12                        Plaintiff,

13          v.                                  ORDER

14    HANIEL SHEN, et al.,

15                        Defendants.

16

17          Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C.

18    § 1983; the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301-30309; the Civil Rights

19    of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997 et seq.; the Americans with

20    Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12203; and the Religious Land Use and

21    Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq.  Plaintiff paid the filing fee

22    in full after the court denied plaintiff's application to proceed in forma pauperis.  In screening of

23    the first amended complaint ("FAC"),[1] the court found that plaintiff had stated an excessive force

24    claim against defendant T. Fuller, but had not stated any claims against defendants Shen,

25    Gonzalez, Associate Warden Johnson, Aguilar, Meeker, C. Johnson, Dunkle, Lao, and Does 10-

26

27    _____
      [1]  Before the court could screen the original complaint, plaintiff filed a first amended complaint
28    that superseded his prior filing.  See Local Rule 220.  As a result, the court screened the FAC,
      ECF No. 8, instead of the original complaint.

                                              1

16.  ECF No. 27 at 3-5.  Plaintiff was given the option to proceed immediately on their[2] excessive force claim against defendant T. Fuller or file an amended complaint.  Id. at 5.  Plaintiff elected to file a second amended complaint ("SAC"), ECF No. 28, which is now before the court for screening.

I.    Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal theories' or whose 'factual contentions are clearly baseless.'"  Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989) (quoting Neitzke, 490 U.S. at 327), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Franklin, 745 F.2d at 1227-28 (citations omitted).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

---

[2]  Plaintiff uses the pronouns "they," "thou," and "their."  ECF No. 32 at 3.

cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted). "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" Id. (alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

II.     Factual Allegations in the Second Amended Complaint[3]

Plaintiff, a designated priest of the Nubian Hebrew Israelites who uses gender neutral pronouns, alleges that while they were housed at California State Prison-Sacramento ("CSP-SAC"), defendants Hood, Ortiz, Cassaro, Shen, T. Fuller, Meeker, C. Johnson, Associate Warden Johnson, Dunkle, Lao, and Doe defendants 1-10 violated plaintiff's rights under the First, Eighth, and Fourteenth Amendments to the U.S. Constitution, PREA, CRIPA, RLUIPA, the ADA, the Transgender Respect, Agency, and Dignity Act ("TRADA") (Cal. Pen. Code. §§ 2605, 2606), the Unruh Civil Rights Act ("Unruh Act") (Cal. Civ. Code §§ 51, 52), section 3331(h) of the California Code of Regulations, and several sections of the California Constitution. Id. at 1-5, 7-9.

Specifically, plaintiff alleges that defendant Hood violated plaintiff's rights by placing his

_____

[3] Plaintiff attaches a violation warning (Form COL), the docket report for this case, and a grievance plaintiff filed on January 2, 2025, regarding conduct by individuals not named in this action to the SAC. See ECF No. 32 at 6, 11-19.

hand on plaintiff's naked body for sexual gratification while threatening to spray plaintiff with pepper spray if plaintiff tried to remove defendant Hood's hand.  Id. at 7.

Plaintiff also alleges that defendants Ortiz, Cassaro, and four other guards "violated plaintiff's pronouns and honorifics," and that, despite plaintiff's preference to be strip searched only by females and to speak to a doctor beforehand, they ripped off plaintiff's clothes, conducted a search, and eyeballed, stalked, and gawked at plaintiff's genitals.  Id.  Unnamed defendants also watched through video surveillance.  Id.

Plaintiff further claims that from August 4, 2022, to August 23, 2022, defendants Hood, Shen, T. Fuller, Meeker, C. Johnson, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, and Doe defendants subjected plaintiff to solitary confinement, and defendants Shen, T. Fuller, Meeker, C. Johnson, and Associate Warden Johnson denied plaintiff's requests for outside exercise.  Id.  Defendant T. Fuller further violated plaintiff's rights on August 8, 2022, when T. Fuller beat plaintiff in the head, face, chest and back with a heavy shield, causing pain, injuries, extreme migraine headaches, and blurry vision, and "viciously put [plaintiff] in unauthorized, inappropriate handcuffs which was painful and unjustified."  Id. at 8.  Plaintiff alleges that T. Fuller's actions violated plaintiff's rights under the ADA and the Eighth Amendment to the U.S. Constitution to be free from cruel and unusual punishment.  Id.

Plaintiff also alleges that, on August 23, 2022, despite defendant Dunkle and Lao being aware that plaintiff suffered from a visual disability, could not walk without a cane, and that plaintiff had a special cuffing chrono stipulating that plaintiff could only be cuffed by waist chain and not by black box, they inappropriately placed "unauthorized handcuffs with a black lockbox on Plaintiff causing him to stumble, fall, and be in severe chronic pain cutting off his circulation."  Id.

Plaintiff further alleges that, to "impede and obstruct the Nubian Hebrew Israelite Faith," defendants prohibited plaintiff "from group prayers & worship on the Holy Sabbath days" and right "to Preach and Minister to others."  Id. at 9.  And that "the Now CDCR Secretary/Director has also acknowledged the Discrimination, Deliberate Indifference, and Denials of Plaintiff's Constitutional Rights which are freely given to Muslims; Catholics; Jews; Christians; ect [sic]

1  without disdain, hatred, and prejudice . . ." Id.

2      Plaintiff claims that the conduct of defendants Hood, Ortiz, Cassaro, Shen, T. Fuller,

3  Meeker, C. Johnson, Associate Warden Johnson, and the Doe defendants caused plaintiff

4  psychological torture, emotional distress, lack of dopamine and serotonin, and melanin causing

5  apathy, and loss of coordination, dexterity, and illness. Id. at 7. Plaintiff claims that because of

6  T. Fuller's excessive force, plaintiff also suffered from "a concussion with migraine headaches,

7  blurry vision, tinnitus, chest and back pain with broken skin on ME wrist from inappropriate

8  unclean handcuffs." Id. at 8. Plaintiff further claims that Dunkle's and Lao's conduct caused

9  plaintiff trauma, high blood pressure, threat of stroke, elder abuse, and hatred. Id. Plaintiff

10  further alleges that he suffered mentally and psychologically from denials regarding plaintiff's

11  religious exercise. Id. at 9.

12      By way of relief, plaintiff seeks monetary and punitive damages, and a permanent

13  injunction. Id. at 10. Plaintiff requests a "Certification, Authorization, and Authentication by

14  Verification that the Practice of the Nubian Hebrew Israelite Faith & Religion is a Bona Fide

15  Religion Pursuant to The Free Exercise and Equal Protection laws under the First and Fourteenth

16  Amendment of the U.S. Constitution." Id. Plaintiff also request that CDCR "Honor the Nubian

17  Hebrew Israelite holy Fast Days during the entire Month of August, monthly Comunions [sic],

18  Food Sales and Banquets allowed to receive donations for books, musical instruments, with

19  Benevolence & Enlightenment." Id.

20      III.    Claims for Which a Response Will be Required

21      After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that

22  plaintiff has adequately stated an Eighth Amendment excessive force claim against defendants T.

23  Fuller, and Eighth Amendment deliberate indifference to safety claims against defendants Dunkle

24  and Lao.

25      IV.    Failure to State a Claim

26      However, plaintiff fails to state First, Fourth, Eighth, or Fourteenth Amendment claims

27  under the U.S. Constitution, or any claims under PREA, CRIPA, RLUIPA, the ADA, or any state

28  laws or regulations.

In general, plaintiff's SAC suffers from the same flaws as plaintiff's FAC—the allegations against each of the remaining defendants are far too vague and conclusory to proceed. While plaintiff alleges that defendants Shen, Hood, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, Meeker, C. Johnson, and Doe defendants 1-10 violated his constitutional rights, and refers to vaguely described incidents, plaintiff again fails to provide necessary factual details that would enable the court to determine any claim's viability.

To the extent plaintiff seeks to hold Associate Warden Johnson liable because of his general supervisory responsibilities, plaintiff cannot do so. To be liable, Associate Warden Johnson either needed to personally participate in or direct the alleged deprivation of constitutional rights or know of the violations and fail to prevent them.

Plaintiff also fails to adequately link *any defendant* to his First Amendment free exercise and retaliation claims. Plaintiff does not adequately describe *which, if any, defendant(s)* specifically deprived plaintiff of their ability to practice their religion, and *how* each individual defendant(s) affirmative acts or failures to act resulted in the alleged deprivation. Similarly, plaintiff does not adequately state *how* defendants, or *which defendant(s)*, prohibited plaintiff from group prayers and worship on the Holy Sabbath days and the right to preach and minster to others, or that defendant(s) did so *because* plaintiff engaged in some protected conduct. Plaintiff's RLUIPA and Fourteenth Amendment Equal Protection Clause claims also suffer from the same flaws; the SAC does not specify *how* the specific conduct of *any defendant(s)* denied plaintiff access to religious services or *which defendants* intentionally discriminated against plaintiff.

The factual allegations in the SAC in support of plaintiff's Eighth Amendment conditions of confinement claim against Hood, Shen, T. Fuller, Meeker, C. Johnson, associate warden Johnson, Cassaro, Aguilar, and/or any Doe defendants appear to be the same as those alleged and previously rejected by this court. See ECF No. 8 at 7; ECF No. 27 at 2-4. Plaintiff has not pled facts showing that placement in solitary confinement for nineteen days without outside exercise opportunities exceeded the limitation that are permissible for security or other legitimate purposes.

Defendant Hood's verbal threats are insufficient to state an Eighth Amendment violation. To the extent Hood, Ortiz, Cassaro, and Doe defendants were conducting a routine visual body search, such conduct does not violate a prisoners' Fourth Amendment rights. Nor does eyeballing or gawking at plaintiff's private parts, in and of itself, constitute an Eighth Amendment violation.

Plaintiffs' additional allegations against Hood, Ortiz, Cassaro and Doe defendants are also insufficient to state a Fourth or Eighth Amendment sexual harassment-based claim. Plaintiff makes nothing more than a conclusory statement that defendant Hood placed his hand on plaintiff's naked body for sexual gratification. None of the details or context necessary to evaluation of the claim is provided. Plaintiff does not indicate what part or parts of plaintiff's body defendant Hood touched; whether Hood touched plaintiff during a search or had some other penological reason for such contact (i.e. defendant was trying to stop plaintiff from assaulting staff, or trying to apply or remove handcuffs) or did so solely for the purpose of humiliating, degrading, or demeaning plaintiff; and whether the contact was more than once, brief or prolonged, and/or exceeded what was required to accomplish any penological interest. Similarly, with respect to Ortiz, Cassaro, and Doe defendants, plaintiff provides no information regarding the basis or lack of justification for the search.

To the extent plaintiff attempts to state a constitutional violation based on a cross-gender strip search, plaintiff fails to do so because the SAC does not state plaintiff's gender identity, nor the gender identities of defendants Hood, Ortiz, Cassaro, or Doe defendants. Furthermore, to the extent plaintiff attempts to state an Eighth Amendment failure to protect claim against Ortiz, Cassaro, or Doe defendants, plaintiff fails to do so because plaintiff has not established a sufficiently serious risk of harm for which he needed protection and for which these defendants failed to protect him from.

Plaintiff also fails to state any claim under PREA or CRIPA because PREA and CRIPA do not contain a private right of action, nor do they create a right enforceable under § 1983. Moreover, plaintiff cannot maintain any state law claims due to plaintiff's failure to allege compliance with the Government Claims Act. Nor does plaintiff state cognizable § 1983 claims based on violations of state regulations.

Lastly, plaintiff's ADA claims against defendants T. Fuller, Dunkle, and Lao also fail. Under the ADA, plaintiff cannot sue T. Fuller, Dunkle, and/or Lao in their individual capacities. Plaintiff's claims against defendants T. Fuller, Dunkle, and Lao in their official capacities also fail because plaintiff does not allege that they were either excluded from participation in or denied benefits of the public entity's services, programs or activities, or that such exclusion, denial, or discrimination was based on plaintiff's disability.  Plaintiff's ADA claim appears to be nothing more than a claim that defendants applied handcuffs on plaintiff despite plaintiff's visual impairments and special cuffing chrono.  This is a deliberate indifference claim, not an ADA claim, and is being permitted to proceed as such against defendants Dunkle and Lao.  See Section III.  Plaintiff, however, has not stated a deliberate indifference claim against defendant T. Fuller for placing handcuffs on plaintiff because plaintiff does not claim T. Fuller knew about plaintiff's special cuffing chrono and ignored it and, and plaintiff does not allege that T. Fuller's actions related to the handcuffing resulted in serious risk to plaintiff's safety.

V.    Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make.  After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately against defendant T. Fuller on an Eighth Amendment excessive force claim and Dunkle and Lao on Eighth Amendment deliberate indifference claims.  By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendant Shen, Hood, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, Meeker, C. Johnson, and Doe defendants 1-10.  The court will proceed to immediately serve the complaint and order a response from defendants Hood, Dunkle, and Lao.**

**The second option available to plaintiff is to file an amended complaint to fix, if possible, the problems described in Section IV against defendants Shen, Hood, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, Meeker, C. Johnson, and Doe defendants 1-10. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give**

8

**plaintiff time to file an amended complaint.**

VI.    Plain Language Summary of this Order for Party Proceeding Without a Lawyer

Some of the allegations in the complaint state claims against the defendants and some do not. You have stated an Eighth Amendment excessive force claim against T. Fuller for beating you on August 8, 2022. You have also stated Eighth Amendment deliberate indifference claims against defendants Dunkle and Lao for handcuffing you with a black lockbox. You have not stated any other claims against T. Fuller, Dunkle, Lao, or any other defendant you have listed in your complaint.

You have a choice to make. You may either (1) proceed immediately on your excessive force and deliberate indifference claims against defendants T. Fuller, Dunkle, and Lao and voluntarily dismiss the other claims; or, (2) try to amend the complaint. To decide whether to amend your complaint, the court has attached the relevant legal standards that may govern your claims for relief. See Attachment A. Pay particular attention to these standards if you choose to file an amended complaint, including the standard for properly joined claims and parties.

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's claims against defendants Shen, Hood, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, Meeker, C. Johnson, and Doe defendants 1-10 do not state claims for which relief can be granted.

2. Plaintiff fails to state First, Fourth, or Fourteenth Amendment claims, or any claims under PREA, CRIPA, RLUIPA, the ADA, and any California state laws or regulations against any defendant.

3. Plaintiff also fails to state an Eighth Amendment conditions of confinement claim against any defendant, or failure to protect claims against Ortiz, Cassaro, or Doe defendants.

4. Plaintiff has the option to proceed immediately on his excessive force claim against defendant T. Fuller and failure to protect deliberate indifference claims against defendants Dunkle and Lao as set forth in Section III above, or to file an amended complaint.

5. Within 21 days from the date of this order, plaintiff shall complete and return the

9

attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

6.  If plaintiff does not return the form, the court will assume that he is choosing to proceed on the second amended complaint as screened and will recommend dismissal without prejudice of defendants Shen, Hood, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, Meeker, C. Johnson, and Doe defendants 1-10.

DATED: April 16, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10    KOHEN DIALLO E. UHURU,                    No.  2:23-cv-0068 DC AC P

11                    Plaintiff,

12         v.                                   NOTICE OF ELECTION

13    HANIEL SHEN, et al.,

14                    Defendants.

15
16         Check one:

17    _____ Plaintiff wants to proceed immediately on his excessive force claim against defendant T.

18         Fuller and failure to protect deliberate indifference claims against defendants Dunkle and

19         Lao without amending the complaint.  Plaintiff understands that by choosing this option,

20         (1) defendants Shen, Hood, Associate Warden Johnson, Ortiz, Cassaro, Aguilar, Meeker,

21         C. Johnson, and Doe defendants 1-10, (2) First, Fourth, and Fourteenth Amendment

22         claims, and claims under PREA, CRIPA, RLUIPA, the ADA, and any California state

23         laws or regulations against any defendant, and (3) Eighth Amendment conditions of

24         confinement claims against any defendant, will be voluntarily dismissed without prejudice

25         pursuant to Federal Rule of Civil Procedure 41(a).

26    _____ Plaintiff wants time to file an amended complaint.

27    DATED:_____

28                                             _____
                                               Kohen Diallo E. Uhuru, Plaintiff pro se
                                                            1

1

<u>Attachment A</u>

2      This Attachment provides, for informational purposes only, the legal standards that may

3  apply to your claims for relief.  Pay particular attention to these standards if you choose to file an

4  amended complaint.

5      I.      <u>Legal Standards Governing Amended Complaints</u>

6      If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions

7  about which he complains resulted in a deprivation of his constitutional rights.  <u>Rizzo v. Goode</u>,

8  423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named

9  defendant is involved.  <u>Arnold v. Int'l Bus. Machs. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).

10  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or

11  connection between a defendant's actions and the claimed deprivation.  <u>Id.</u>; <u>Johnson v. Duffy</u>,

12  588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official

13  participation in civil rights violations are not sufficient."  <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266,

14  268 (9th Cir. 1982) (citations omitted).

15      Plaintiff is also informed that the court cannot refer to a prior pleading in order to make

16  his amended complaint complete.  <u>See</u> Local Rule 220.  This is because, as a general rule, an

17  amended complaint replaces the prior complaint.  <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967)

18  (citations omitted), <u>overruled in part by</u> <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 928 (9th Cir.

19  2012).  Therefore, in an amended complaint, every claim and every defendant must be included.

20      II.      <u>Legal Standards Governing Substantive Claims for Relief</u>

21  A.  <u>Section 1983</u>

22      Section 1983 provides in relevant part:

23          Every person who, under color of any statute, ordinance, regulation,
            custom, or usage, of any State or Territory or the District of
24          Columbia, subjects, or causes to be subjected, any citizen of the
            United States or other person within the jurisdiction thereof to the
25          deprivation of any rights, privileges, or immunities secured by the
            Constitution and laws, shall be liable to the party injured in an action
26          at law, suit in equity, or other proper proceeding for redress . . . .

27  42 U.S.C. § 1983.  Accordingly, "the requirements for relief under [§] 1983 have been articulated

28  as: (1) *a violation of rights protected by the Constitution or created by federal statute,* (2)

1

1 proximately caused (3) by conduct of a 'person' (4) acting under color of state law." Crumpton v.

2 Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (emphasis added).

3       An officer's violation of state laws and/or regulations is not grounds for a § 1983 claim.

4 See Case v. Kitsap County Sheriff's Dept., 249 F.3d 921, 930 (9th Cir. 2001) (quoting Gardner v.

5 Howard, 109 F.3d 427, 430 (8th Cir 1997) ("[T]here is no § 1983 liability for violating prison

6 policy. [Plaintiff] must prove that [the official] violated his constitutional right . . .")).  Violations

7 of state law and regulations cannot be remedied under § 1983 unless they also violate a federal

8 constitutional or statutory right.  See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009)

9 (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v.

10 Ada Cty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for

11 violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370-71 (9th Cir. 1996)

12 (federal and state law claims should not be conflated; "[t]o the extent that the violation of a state

13 law amounts the deprivation of a state-created interest that reaches beyond that guaranteed by the

14 federal Constitution, Section 1983 offers no redress").

15       B. Personal Involvement and Supervisory Liability

16       The civil rights statute requires that there be an actual connection or link between the

17 actions of the defendants and the deprivation alleged to have been suffered by

18 plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode,

19 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the

20 deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

21 act, participates in another's affirmative acts or omits to perform an act which he is legally

22 required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588

23 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  In order to state a claim for relief under section

24 1983, plaintiff must link each named defendant with some affirmative act or omission that

25 demonstrates a violation of plaintiff's federal rights.

26       Government officials may not be held liable for the unconstitutional conduct of their

27 subordinates under a theory of respondeat superior.  Ashcroft v. Iqbal, 556 U.S. 662, 677

28 (2009) ("In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious

1  liability, each Government official, his or her title notwithstanding is only liable for his or her

2  own misconduct.").  When the named defendant holds a supervisory position, the causal link

3  between the defendant and the claimed constitutional violation must be specifically alleged; that

4  is, a plaintiff must allege some facts indicating that the defendant either personally participated in

5  or directed the alleged deprivation of constitutional rights or knew of the violations and failed to

6  act to prevent them.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Taylor v. List, 880

7  F.2d 1040, 1045 (9th Cir. 1989); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

8      C.  Doe Defendants

9      Although the use of Doe defendants is acceptable to withstand dismissal at the initial

10  screening stage, service of process for these defendants will not be ordered until such time as

11  plaintiff has: 1) identified them by their real names through discovery; and, 2) filed a motion to

12  amend the complaint to substitute their real names.  See Mosier v. Cal. Dep't of Corr. & Rehab.,

13  2012 WL 2577524, at *3, 2012 U.S. Dist. LEXIS 92286 (E.D. Cal. July 2, 2012); Robinett v.

14  Corr. Training Facility, 2010 WL 2867696, at *4, 2010 U.S. Dist. LEXIS 76327 (N.D. Cal. July

15  20, 2010).  Allegations against Doe defendants should identify each Doe defendant separately

16  (e.g., Doe 1, Doe 2, etc.) and explain what each individual did to violate plaintiff's rights.

17      D.  Joinder of Claims and Parties

18      A plaintiff may properly assert multiple claims against a single defendant in a civil action.

19  Fed. Rule Civ. P. 18.  In addition, a plaintiff may join multiple defendants in one action where

20  "any right to relief is asserted against them jointly, severally, or in the alternative with respect to

21  or arising out of the same transaction, occurrence, or series of transactions and occurrences" and

22  "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P.

23  20(a)(2).  However, unrelated claims against different defendants must be pursued in separate

24  lawsuits.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).  This rule is intended "not only

25  to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to

26  ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3

27  the number of frivolous suits or appeals that any prisoner may file without prepayment of the

28  required fees.  28 U.S.C. § 1915(g)."  Id.

1    E.   First Amendment Free Exercise Clause

2        "The right to exercise religious practices and beliefs does not terminate at the prison door.

3  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be

4  curtailed to achieve legitimate correctional goals or to maintain prison security.  We determine

5  whether these competing interests are balanced properly by applying a reasonableness

6  test: When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if

7  it is reasonably related to legitimate penological interests."  McElyea v. Babbitt, 833 F.2d 196,

8  197 (9th Cir. 1987) (citations and internal quotation marks omitted); see also Shakur v. Schriro,

9  514 F.3d 878, 889 (9th Cir. 2008) ("Once the plaintiff establishes that the challenged state action

10  substantially burdens his religious exercise, the government bears the burden of establishing that

11  the regulation serves a compelling government interest and is the least restrictive means of

12  achieving that interest.").

13        "A person asserting a free exercise claim must show that the government action in

14  question substantially burdens the person's practice of her religion.  A substantial burden places

15  more than an inconvenience on religious exercise; it must have a tendency to coerce individuals

16  into acting contrary to their religious beliefs or exert substantial pressure on an adherent to

17  modify his behavior and to violate his beliefs."  Jones v. Williams, 791 F.3d 1023, 1031-32 (9th

18  Cir. 2015) (citations, internal quotation marks, and alterations omitted).

19    F.   First Amendment Retaliation

20        "Within the prison context, a viable claim of First Amendment retaliation entails five

21  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

22  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

23  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

24  correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted).

25  Filing an inmate grievance is a protected action under the First Amendment.  Bruce v. Ylst, 351

26  F.3d 1283, 1288 (9th Cir. 2003).  Harm that "would chill a 'person of ordinary firmness' from

27  complaining" is sufficient to find an "adverse action."  Shepard v. Quillen, 840 F.3d 686, 691 (9th

28  Cir. 2016) (quoting Rhodes, 408 F.3d at 569) (placement in administrative segregation or even

1    threat to do so on its own amounts to adverse action satisfying the first element). The mere threat

2    of harm can be a sufficiently adverse action to support a retaliation claim. *Id.* at 688-89.

3         G.  Fourth Amendment – Strip Searches

4         The Fourth Amendment protects against unreasonable searches, and that right is not lost

5    to convicted inmates.  Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993).  However,

6    "incarcerated prisoners retain a limited right to bodily privacy."  Michenfelder v. Sumner, 860

7    F.2d 328, 333 (9th Cir. 1988) (emphasis added).

8         A detention facility's strip-search policy is analyzed using the test for reasonableness

9    outlined in Bell v. Wolfish, as "[t]he Fourth Amendment prohibits only unreasonable searches."

10   Bull v. City and County of San Francisco, 595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in

11   original) (internal quotation marks omitted) (quoting Bell, 441 U.S. at 558).  Under Bell, the court

12   must balance "the need for the particular search against the invasion of personal rights that the

13   search entails."  441 U.S. at 559.  To do so, courts must consider "[1] the scope of the particular

14   intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and [4] the

15   place in which it is conducted."  Id.; see also Byrd v. Maricopa Cnty. Bd. of Supervisors, 845

16   F.3d 919, 922-24 (9th Cir. 2017) (same test for whether a cross-gender strip search violates the

17   Fourth Amendment).

18        "Correctional officials have a significant interest in conducting a thorough search as a

19   standard part of the intake process," and the Supreme Court has held that all detainees, when

20   joining a general detained population, can be subject to strip searches even without reasonable

21   suspicion that a specific individual is concealing weapons or other contraband.  Florence v. Bd. of

22   Chosen Freeholders, 566 U.S. 318, 30-39 (2012).  Further, strip searches that are limited to

23   "visual inspection," even if "invasive and embarrassing," can be resolved in favor of the

24   institution.  Bull, 595 F.3d at 975 (holding that visual strip searches that are held in a

25   "professional manner and in a place that afforded privacy" and done to prevent the smuggling of

26   contraband did not violate Fourth Amendment); Bell, 441 U.S. at 558 (routine visual body cavity

27   searches do not violate prisoners' Fourth Amendment rights).  However, searches done for the

28   purpose of harassment are not constitutionally valid—the Supreme Court has held that

5

1 "intentional harassment of even the most hardened criminals cannot be tolerated" by the Fourth

2 Amendment's protections, and that they may even violate the Eighth Amendment.  Hudson v.

3 Palmer, 468 U.S. 517, 528, 530 (1984); see also Michenfelder, 860 F.2d at 332 (strip searches

4 that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may

5 be unconstitutional).   Strip searches where "a prison staff member, acting under color of law and

6 without legitimate penological justification, touched the prisoner in a sexual manner or otherwise

7 engaged in sexual conduct for the staff member's own sexual gratification, or for the purpose of

8 humiliating, degrading, or demeaning the prisoner," Bearchild v. Cobban, 947 F.3d 1130, 1144

9 (9th Cir. 2020), violate both the Fourth and Eighth Amendments.

10 "[C]ross-gender strip searches in the absence of an emergency violate an inmate's right

11 under the Fourth Amendment to be free from unreasonable searches." Byrd v. Maricopa Cnty.

12 Sheriff's Dep't, 629 F.3d 1135, 1146 (9th Cir. 2011).

13 　　H.  Eighth Amendment – Excessive Force

14 The Eighth Amendment prohibits prison officials from inflicting cruel and unusual

15 punishment on inmates which has been defined as "the unnecessary and wanton infliction of

16 pain." Whitley v. Albers, 475 U.S. 312, 319 (1986).  "[W]henever prison officials stand accused

17 of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the

18 core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore

19 discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7

20 (1992).  The court's inquiry into an excessive force claim focuses on the extent of the prisoner's

21 injury, the need for application of force, the relationship between that need and the amount of

22 force used, the threat reasonably perceived by the responsible officials, and any efforts made to

23 temper the severity of a forceful response.  Hudson, 503 U.S. at 7 (1992) (quotation marks and

24 citations omitted).  While the absence of a serious injury is relevant to the Eighth Amendment

25 inquiry, it does not end it.  Hudson, 503 U.S. at 7.  The malicious and sadistic use of force to

26 cause harm always violates contemporary standards of decency in violation of the Eighth

27 Amendment.  Whitley, 475 U.S. at 327.

28 ////

6

1    I.    Eighth Amendment - Verbal Threats

2         "A mere threat may not state a cause of action" under the Eighth Amendment.  Gaut v.

3    Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (per curiam) (a "mere naked threat" from prison guards

4    does not violate the Eighth Amendment; it "trivializes the Eighth Amendment to believe

5    a threat constitutes a constitutional wrong"); see also Corales v. Bennett, 567 F.3d 554, 564-65

6    (9th Cir. 2009) (In Gaut, we found "no case that squarely holds a threat to do an act prohibited by

7    the Constitution is equivalent to doing the act itself.")

8    J.    Eighth Amendment – Failure to Protect

9         "[A] prison official violates the Eighth Amendment only when two requirements are met.

10   First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or

11   omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer

12   v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).  Second,

13   the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate

14   indifference to inmate health or safety."  Id. (internal quotation marks and citations omitted).

15   The official is not liable under the Eighth Amendment unless he "knows of and disregards an

16   excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  He

17   must then fail to take reasonable measures to lessen the substantial risk of serious harm.  Id. at

18   847.  Negligent failure to protect an inmate from harm is not actionable under § 1983.  Id. at 835.

19   K.    Eighth Amendment – Conditions of Confinement

20        In order for a prison official to be held liable for alleged unconstitutional conditions of

21   confinement, the prisoner must allege facts that satisfy a two-prong test.  Peralta v. Dillard, 744

22   F.3d 1076, 1082 (9th Cir. 2014) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The first

23   prong is an objective prong, which requires that the deprivation be "sufficiently serious."  Lemire

24   v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (citing Farmer, 511 U.S. at

25   834).  In order to be sufficiently serious, the prison official's "act or omission must result in the

26   denial of the 'minimal civilized measure of life's necessities."  Lemire, 726 F.3d at 1074.  The

27   objective prong is not satisfied in cases where prison officials provide prisoners with "adequate

28   shelter, food, clothing, sanitation, medical care, and personal safety."  Johnson v. Lewis, 217 F.3d

7

1  726, 731 (9th Cir. 2000) (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)).

2  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional

3  violation. Johnson, 217 F.3d at 732 ("[m]ore modest deprivations can also form the objective

4  basis of a violation, but only if such deprivations are lengthy or ongoing"). Rather, extreme

5  deprivations are required to make out a conditions of confinement claim, and only those

6  deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to

7  form the basis of an Eighth Amendment violation. Farmer, 511 U.S. at 834; Hudson v.

8  McMillian, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are

9  critical in determining whether the conditions complained of are grave enough to form the basis

10  of a viable Eighth Amendment claim. Johnson, 217 F.3d at 731.

11      The second prong focuses on the subjective intent of the prison official. Peralta, 774 F.3d

12  at 1082 (9th Cir. 2014) (citing Farmer, 511 U.S. at 837). The deliberate indifference standard

13  requires a showing that the prison official acted or failed to act despite the prison official's

14  knowledge of a substantial risk of serious harm to the prisoner. Id. (citing Farmer, 511 U.S. at

15  842; see also Redman v. County. of San Diego, 942 F.2d 1435, 1439 (9th Cir. 1991). Mere

16  negligence on the part of the prison official is not sufficient to establish liability. Farmer, 511

17  U.S. at 835.

18      Exercise has been recognized as "one of the basic human necessities protected by the

19  Eighth Amendment." Norbert v. City and County of San Francisco, 10 F.4th 918, 928 (9th Cir.

20  2021) (citing May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)). "Deprivation of outdoor

21  exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term

22  segregation." Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996) (citing Spain v. Procunier, 600

23  F.2d 189, 199 (9th Cir. 1979)), amended by 135 F.3d 1318 (9th Cir. 1998). Still, "a temporary

24  denial of outdoor exercise with no medical effects is not a substantial deprivation." May v.

25  Baldwin, 109 F.3d 557, 565 (9th Cir. 1997); see also Noble v. Adams, 636 F.3d 525, 531 (9th

26  Cir. 2011) (concluding prison officials were entitled to qualified immunity from § 1983 claim that

27  post-riot lockdown of prison resulted in denial of Eighth Amendment right to exercise); Norwood

28  v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010) (recognizing that temporary denial of outdoor

1    exercise with no medical effects is not a substantial deprivation); Frost v. Agnos, 152 F.3d 1124,

2    1130 (9th Cir. 1998).  Moreover, prison officials may restrict outdoor exercise based on weather,

3    unusual circumstances, or disciplinary needs.  See Spain, 600 F.2d at 199-200.

4           In determining whether prison officials are providing constitutionally adequate outdoor

5    exercise time requires an evaluation of the totality of the circumstances, including other

6    opportunities for indoor recreation, the length of time the inmate is held under the conditions,

7    whether the inmate has contact with others, whether disciplinary measures impact the conditions,

8    and whether the inmate has opportunities for training or rehabilitation programs.  Norbert, 10

9    F.4th at 929-32.

10          L.  Eighth Amendment Sexual Abuse and Harassment

11          This Eighth Amendment legal standard applies to sexual abuse and harassment claims.

12    Wood v. Beauclair, 692 F.3d 1041, 1045-47 (9th Cir. 2012) (citing Hudson v. McMillian, 503

13    U.S. 1, 8 (1992)).  "Sexual harassment or abuse of an inmate by a corrections officer is a violation

14    of the Eighth Amendment."  Id. at 1046; see also Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th

15    Cir. 2000).  However, "not 'every malevolent touch by a prison guard gives rise to a federal cause

16    of action.'"  Watison v. Carter, 668 F.3d 1108, 1113 (9th Cir. 2012) (quoting Hudson, 503 U.S. at

17    9).  Additionally, allegations of sexual harassment that do not involve touching are not

18    "sufficiently serious" to sustain an Eighth Amendment claim.  Somers v. Thurman, 109 F.3d 614,

19    624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the prohibition against

20    cruel and unusual punishment would trivialize the objective component of the Eighth Amendment

21    test and render it absurd.").

22          The Ninth Circuit has held that a prisoner states a viable Eighth Amendment claim where

23    he or she "proves that a prison staff member, acting under color of law and without legitimate

24    penological justification, touched the prisoner in a sexual manner or otherwise engaged in sexual

25    conduct for the staff member's own sexual gratification, or for the purpose of humiliating,

26    degrading, or demeaning the prisoner."  Bearchild v. Cobban, 947 F.3d 1130, 1144 (9th Cir.

27    2020).  "[W]here the allegation is that a guard's conduct began as an invasive procedure that

28    served a legitimate penological purpose, the prisoner must show that the guard's conduct

9

1   exceeded the scope of what was required to satisfy whatever institutional concern justified the

2   initiation of the procedure." Id. at 1145. "Such a showing will satisfy the objective and

3   subjective components of an Eighth Amendment claim." Id.

4        Allegations of one incident of brief touching, without more, is not sufficiently serious to

5   state an Eighth Amendment claim. See Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir.

6   2012) (affirming dismissal of Eighth Amendment sexual harassment claim against a correctional

7   officer who allegedly entered plaintiff's cell while plaintiff was on the toilet, rubbed his thigh

8   against plaintiff's thigh and "began smiling in a sexual contact [sic]," then left plaintiff's cell

9   laughing); see also Berryhill v. Schriro, 137 F.3d 1073, 1076 (9th Cir. 1998) ("[E]ven outside the

10  context of a search, if a defendant is alleged to have grabbed a plaintiff's buttocks for a few

11  seconds, the claim does not give rise to an Eighth Amendment violation.").

12       Cross-gender body searches can constitute an Eighth Amendment violation. Jordan v.

13  Gardner, 986 F.2d 1521, 1525-28 (9th Cir. 1993) (finding cross-gender body search policy

14  constituted unnecessary "infliction of pain" under the Eighth Amendment where women inmates

15  had "shocking histories of verbal, physical, and, in particular, sexual abuse" by men); but see

16  Somers v. Thurman, 109 F.3d 614, 622-24 (9th Cir. 1997) (concluding that allegations that

17  female guards conducted visual searches of a male inmate or saw the male inmate nude are

18  insufficient, by themselves, to state a claim under the Eighth Amendment).

19      M. Fourteenth Amendment - Equal Protection Clause

20       The Fourteenth Amendment's Equal Protection Clause requires the State to treat all

21  similarly situated people equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439

22  (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a

23  plaintiff must show that the defendant acted with an intent or purpose to discriminate against him

24  based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9th

25  Cir. 2003) (citing Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)). Alternatively, a

26  plaintiff may state an equal protection claim if he shows similarly situated individuals were

27  intentionally treated differently without a rational relationship to a legitimate government

28  purpose. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations omitted).

10

1    N.    Americans with Disabilities Act

2        "The ADA contains five titles: Employment (Title I), Public Services (Title II), Public

3    Accommodations and Services Operated by Private Entities (Title III), Telecommunications

4    (Title IV), and Miscellaneous Provisions (Title V)."  See Americans with Disability Act of 1990,

5    Pub.L. No. 101-336, 104 Stat. 327, 327-28 (1990).  Title II of the ADA applies to inmates within

6    state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998).  To state a

7    claim for violation of Title II of the ADA, a plaintiff must allege four elements:

8            (1) [H]e is an individual with a disability; (2) he is otherwise
         qualified to participate in or receive the benefit of some public
9            entity's services, programs, or activities; (3) he was either excluded
         from participation in or denied the benefits of the public entity's
10           services, programs, or activities, or was otherwise discriminated
         against by the public entity; and (4) such exclusion, denial of
11           benefits, or discrimination was by reason of [his] disability.

12   O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007); see also Thompson v.

13   Davis, 295 F.3d 890, 895 (9th Cir. 2002); Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir.

14   2001).

15       "A plaintiff can allege disability discrimination in the provision of inmate services,

16   programs, or activities under the ADA by pleading either (1) discrimination based on disparate

17   treatment or impact, or (2) denial of reasonable modifications or accommodations."  Cravotta v.

18   County of Sacramento, No. 2:22-cv-0167 DJC AC, 2024 WL 645705, at *7, 2024 U.S. Dist.

19   LEXIS 26740, at *21 (E.D. Cal. Feb. 15, 2024); see Dunlap v. Ass'n of Bay Area Gov'ts, 996 F.

20   Supp. 962, 965 (N.D. Cal. 1998) ("[T]he ADA not only protects against disparate treatment, it

21   also creates an affirmative duty in some circumstances to provide special, preferred treatment, or

22   'reasonable accommodation.'").  To support such a disparate impact claim, a plaintiff must

23   demonstrate that the policy has the "effect of denying meaningful access to public services."

24   K.M. ex rel. Bright v. Tustin Unified Sch. Dist., 725 F.3d 1088, 1102 (9th Cir. 2013).  Although

25   § 12132 does not expressly provide for reasonable accommodations, the implementing

26   regulations provide that "[a] public entity shall make reasonable modifications in policies,

27   practices, or procedures when the modifications are necessary to avoid discrimination on the basis

28   of disability, unless the public entity can demonstrate that making the modifications would

1    fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i);

2    see also Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008).

3        "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against

4    the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates

5    state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159 (2006) (emphasis in

6    original). The proper defendant in an ADA action is the public entity responsible for the alleged

7    discrimination. United States v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities

8    are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Penn.

9    Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong v. Wilson, 124 F.3d 1019, 1025

10   (9th Cir. 1997). ADA claims may not be brought against state officials in their individual

11   capacities. Stewart v. Unknown Parties, 483 F. App'x 374, 374 (9th Cir. 2012) (citing Lovell v.

12   Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002)); Garcia v. S.U.N.Y. Health Scis. Ctr. of

13   Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the

14   Rehabilitation Act provides for individual capacity suits against state officials." (citations

15   omitted)).

16       Compensatory damages are available under the ADA when plaintiff demonstrates that the

17   discrimination he experienced was the result of deliberate indifference, which "requires both

18   knowledge that a harm to a federally protected right is substantially likely, and a failure to act

19   upon that likelihood." Duvall, 260 F.3d at 1138-39 (citations omitted). "When the plaintiff has

20   alerted the public entity to his need for accommodation . . ., the public entity is on notice that an

21   accommodation is required, and the plaintiff has satisfied the first element of the deliberate

22   indifference test." Id. at 1139. "[I]n order to meet the second element of the deliberate

23   indifference test, a failure to act must be a result of conduct that is more than negligent, and

24   involves an element of deliberateness." Id. (citations omitted).

25       Treatment, or lack of treatment, concerning plaintiff's medical condition does not provide

26   a basis upon which to impose liability under the ADA. "The ADA prohibits discrimination

27   because of disability, not inadequate treatment for disability." Simmons v. Navajo County, 609

28   F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)).

12

1

O.  <u>Religious Land Use and Institutionalized Persons Act</u>

2      RLUIPA prohibits prison officials from substantially burdening a prisoner's "'religious

3  exercise unless the burden furthers a compelling governmental interest and does so by the least

4  restrictive means.'"  <u>Alvarez v. Hill</u>, 518 F.3d 1152, 1156 (9th Cir. 2008) (internal quotations and

5  citations omitted).  The plaintiff bears the initial burden of demonstrating that an institution's

6  actions have placed a substantial burden on plaintiff's free exercise of religion.

7      To state a cognizable claim under RLUIPA, plaintiff must specify how the defendant

8  denied him access to religious services.  <u>Walker v. Beard</u>, 789 F.3d 1125, 1134 (9th Cir. 2015)

9  ("To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a 'religious

10  exercise,' and (2) the State's actions have substantially burdened that exercise." (citation

11  omitted)).  "RLUIPA does not define 'substantial burden,' but [the Ninth Circuit] has held that 'a

12  substantial burden on religious exercise must impose a significantly great restriction or onus upon

13  such exercise.'"  <u>Hartmann</u>, 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quoting <u>San Jose Christian</u>

14  <u>Coll. v. City of Morgan Hill</u>, 360 F.3d 1024, 1034 (9th Cir. 2004)).  With respect to challenges to

15  institutional policies, the Ninth Circuit "has held that a substantial burden occurs 'where the state

16  . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting

17  substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  <u>Id.</u> at 1125

18  (alteration in original) (quoting <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 995 (9th Cir. 2005)).

19      "If the prisoner satisfies those elements, then the State must prove its actions were the

20  least restrictive means of furthering a compelling governmental interest."  <u>Walker</u>, 789 F.3d at

21  1134 (citation omitted).

22      Plaintiff is advised that monetary damages are not available under RLUIPA against state

23  officials sued in their individual capacities.  <u>See</u> <u>Jones v. Williams</u>, 791 F.3d 1023, 1031 (9th Cir.

24  2015) ("RLUIPA does not authorize suits for damages against state officials in their individual

25  capacities because individual state officials are not recipients of federal funding and nothing in

26  the statute suggests any congressional intent to hold them individually liable.").  RLUIPA only

27  authorizes suits against a person in his or her official or governmental capacity.  <u>See</u> <u>Wood v.</u>

28  <u>Yordy</u>, 753 F.3d 899, 904 (9th Cir. 2014).

ATTACHMENT A

1    P.    Prison Rape Elimination Act ("PREA")

2            "In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a

3    federal *right*, not merely a violation of federal *law*."    Blessing v. Freestone, 520 U.S. 329, 340

4    (1997) (emphasis in original) (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103,

5    106 (1989).  The PREA, 42 U.S.C. § 15601-15609, "authorizes the reporting of incidents of rape

6    in prison, allocation of grants, and creation of a study commission," but there is nothing in the

7    PREA to indicate that it created a private right of action, enforceable under § 1983 or

8    otherwise.  Johnson v. Garrison, 859 Fed. App'x 863, 863-64 (10th Cir. 2021); McPherson v.

9    Carpenter, No. 2:2-cv-0202 DC CSK, 2025 WL 745819, at *2 [LEXIS], (E.D. Cal. Mar. 7, 2025);

10    Porter v. Jennings, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1, 2012 U.S. Dist.

11    LEXIS 58021, at *3 (E.D. Cal. Apr. 25, 2012) (collecting cases).  Since PREA itself contains no

12    private right of action, there is no corresponding right to enforceable under § 1983.  See Graham

13    v. Connor, 490 U.S. 386, 393-94 (1989) ("Section 1983 . . . provides a method for vindicating

14    federal rights conferred elsewhere.").

15    Q.    Civil Rights of Institutionalized Persons Act ("CRIPA")

16            Section 1997a, which is part of the Civil Rights of Institutionalized Persons Act

17    ("CRIPA"), 42 U.S.C. § 1997 et seq., does not create a private right of action.  See McRorie v.

18    Shimoda, 795 F.2d 780, 782 n.3 (9th Cir. 1986) ("McRorie also requested relief under 42 U.S.C.

19    §§ 1997–1997j, which authorize the United States Attorney General to institute civil actions

20    against certain institutions for violating the civil rights of persons confined or residing therein.

21    We affirm the district court dismissal of this claim because 42 U.S.C. § 1997j precludes a private

22    cause of action under these sections."); United States Dep't of Justice Hostage Rescue Team v.

23    Cal. Dep't of Corr. & Rehab., No. 2:22-cv-3134-JVS-JC, 2022 WL 4451868, *5, 2022 U.S. Dist.

24    LEXIS 173315, at *11 (C.D. Cal. Aug. 10, 2022) ("CRIPA does not authorize a private right of

25    action"), report and recommendation accepted by, 2022 WL 4448902, 2022 U.S. Dist. LEXIS

26    172886 (C.D. Cal. Sept. 23, 2022); Montezello v. Pesce, No. 2:21-cv-0906-KJM-EFB (PC), 2022

27    WL 17584384, at *1, 2022 U.S. Dist. LEXIS 226127, at *1 (E.D. Cal. Dec. 12, 2022).

28    ////

1

R.  <u>State Law Claims</u>

2

Under the California Government Claims Act, no action for damages may be commenced

3

against a public employee or entity unless a written claim was timely presented (within six

4

months after the challenged incident) and acted upon before filing suit.  <u>See</u> Cal. Govt. Code

5

§§ 905, 945.4, 950.2.  The resulting suit must "allege facts demonstrating or excusing compliance

6

with the claim presentation requirements" or the state law claim is subject to dismissal.  <u>State of</u>

7

<u>California v. Superior Ct.</u>, 32 Cal.4th 1234, 1239 (2004).  "The requirement that a plaintiff must

8

affirmatively allege compliance with the [Government Claims Act] applies in federal court."

9

<u>Butler v. Los Angeles County</u>, 617 F. Supp. 2d 994, 1001 (C.D. Cal. 2008).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A